## OHIO vs. LAFFERTY.

HARRISON,
March, 1817.

Ohio
v.
Lafferty.

The common law of England, so far as is compatible with our principles and form of government, is a part of the law of Ohio.

Offences at common law, are within the jurisdiction of the courts of common pleas.

LAFFERTY was convicted, on three several indictments, for selling unwholesome provisions.

WRIGHT, for the defendant, moved, in arrest of judgment " for that there is no law of this state against selling unwholesome provisions." He observed, that the indictment was bottomed upon the common law of England, which was not in force in this state, it never having been adopted by our constitution or recognized by our laws or judicial decisions: that the 4th section of the 3d article of the constitution, limited and confined the jurisdiction of the court to offences declared such by the statute laws. He admitted that the offence charged, was an offence against the public, which at common law was indictable and punishable where the common law was in force; but that, in this state, as the common law was not in force, and no statute had declared it criminal, it was not an act which could be prosecuted criminally.

BEEBE, contra. That the section of the constitution quoted and relied upon by Wright, as limiting the jurisdiction of the court to statutory offences, was not fairly construed; it should be considered as referring the courts to the statute law, for the extent of their several jurisdictions in criminal cases; and so considered the statute law which gave to the supreme court jurisdiction in all capital cases, and to the courts of common pleas jurisdiction in all cases not capital, without any specification of indictable offences; did point out the manner and the cases in which this section of the constitution intended the duties of the courts should be divided, and that it did not exclude a common law jurisdiction.

PRESIDENT.—The question raised on this motion, whether the common law is a rule of decision in this state? is one of very great interest and importance, and one upon which contradictory opinions have been holden both at the bar and upon the bench

8

HARRISON.
March, 1817.

Ohio
v.
Lafferty.

No just government ever did, nor probably ever can, exist, without an unwritten or common law. By the common law, is meant those maxims, principles, and forms of judicial proceeding, which have no written law to prescribe or warrant them, but which, founded on the laws of nature and the dictates of reason, have, by usage and custom, become interwoven with the written laws; and, by such incorporation, form a part of the municipal code of each state or nation, which has emerged from the loose and erratic habits of savage life, to civilization, order, and a government of law.

For the forms of process, indictment, and trial, we have no statute law directing us; and for almost the whole law of evidence, in criminal as well as in civil proceedings, we must look to the common law, for we have no other guide. Can it be said, then, that the common law is not in force, when, without its aid and sanction, justice cannot be administered; when even the written laws cannot be construed, explained, and enforced, without the common law, which furnishes the rules and principles of such construction?

We may go further and say, that not only is the common law necessarily in force here, but that its authority is superior to that of the written laws; for it not only furnishes the rules and principles by which the statute laws are construed, but it ascertains and determines the validity and authority of them. It is, therefore, that lord Hobart said, that a statute law against reason, as to make a man a judge in his own cause, was void.

As the laws of nature and reason are necessarily in force in every community of civilized men, (because nature is the common parent, and reason the common guardian of man) so with communities as with individuals, the right of self-preservation is a right paramount to the institution of written law; and hence the maxim, *the safety of the people is the supreme law,* needs not the sanction of a constitution or statute to give it validity and force; but it cannot have validity and force, as law, unless the judicial tribunals have power to punish all such actions as directly tend to jeopardize that safety; unless, indeed, the judicial tribunals are the guardians of public morals and the conservators of the public peace and order. Whatever acts, then, are wicked and immoral in themselves, and directly tend to injure the community, are crimes against the community, which not only *may* but *must* be repressed and punished, or government and social order cannot be preserved. It is this salutary principle of the common law, which spreads its shield over society, to protect it from the incessant activity and novel

inventions of the profligate and unprincipled, inventions which the most perfect legislation could not always see and guard against.

But although the common law, in all countries, has its foundation in reason and the laws of nature, and therefore is similar in its general principles, yet in its application it has been modified and adapted to various forms of government; as the different orders of architecture, having their foundation in utility and graceful proportion, rise in various forms of symmetry and beauty, in accordance with the taste and judgment of the builder.    It is also a law of liberty; and hence we find, that when North America was colonized by emigrants who fled from the pressure of monarchy and priestcraft in the old world, to enjoy freedom in the new, they brought with them the common law of England, (their mother country) claiming it as their birth-right and inheritance.    In their charters from the crown they were careful to have it recognized as the foundation on which they were to erect their laws and governments: not more anxious was Æneas to secure from the burning ruins of Troy his household gods, than were these first settlers of America to secure to themselves and their children the benefits of the common law of England.    From thence, through every stage of the colonial governments, the common law was in force, so far as it was found necessary or useful.    When the revolution commenced, and independent state governments were formed; in the midst of hostile collisions with the mother country, when the passions of men were inflamed, and a deep and general abhorrence of the tyranny of the British government was felt; the sages and patriots who commenced that revolution, and founded those state governments, recognized in the common law a guardian of liberty and social order. The common law of England has thus always been the common law of the colonies and states of North America; not indeed in its full extent, supporting a monarchy, aristocracy, and hierarchy, but so far as it was applicable to our more free and happy habits of government.

Has society been formed and government instituted in Ohio, on different principles from the other states in this respect? The answer to this question will be found in our written laws.

The ordinance passed by the congress of the United States, on the 13th of July, 1787, "for the government of the territory of the United States North West of the river Ohio," is the earliest of our written laws. Possessing the North Western Territory in absolute sovereignty, the United States, by that instrument, provide for the temporary government of the people who may settle there; and, to use the

HARRISON,
March, 1817.

Ohio
v.
Lafferty.

language of that instrument, "for extending the funda- "mental principles of civil and religious liberty, which "forms the basis whereon these republics, their laws and "constitutions are erected; to fix and establish those "principles as the basis of all laws, constitutions and governments, "which forever hereafter shall be formed in the said territory; to "provide also for the establishment of states and permanent govern- "ment therein; and for their admission to a share in the federal "councils, on an equal footing with the original states, at as early "periods as may be consistent with the general interest," it was ordained and declared, "that the inhabitants of the said territory "shall *always* be entitled to the benefits of the writ of habeas corpus, "and of the trial by jury; of a proportionate representation of the "people in the legislature, *and of judicial proceedings according to the* "*course of common law*"—as one of the articles of compact between the original states, and the people and states in the said territory, to remain forever unalterable unless by common consent. Under this ordinance we purchased lands and made settlements, in this then N. Western Territory; we became voluntary parties to this contract, and made it, by our own act, what it was intended to be, "the basis of all our laws, constitutions and government"—and thus the common law became here, as it had become in the earliest colonies, the foundation of our whole system of jurisprudence.

That these articles of compact were of perpetual obligation upon the people and states to be formed in the territory, unless altered by the mutual consent of such states and of the original states, is a position which I have never heard controverted; yet it may not be useless to advert to express recognitions of it by both the contracting parties. First: the United States, by the act of congress entitled "an act to enable the people of the eastern division of the territory North West of the river Ohio, to form a constitution and state government, and for the admission of such state into the Union, on an equal footing with the original states, and for other purposes," under the authority of which Ohio became an independent state, authorised the people of said division to form a constitution and state government, "provided the same shall be "republican, and not repugnant to the ordinance of the 13th of "July, 1787, between the original states and the people and states "of the territory North West of the river Ohio." Section 5th.— Second: the people of Ohio by the preamble to their state constitution, declare, that they ordain and establish that constitution,

"consistent with the constitution of the United States, the ordinances of congress of 1787, and the laws of congress."

The common law being a part of the existing system of jurisprudence at the time when the state government was formed, and its continuance being expressly provided for by the 4th section of the last article or schedule to this constitution, which declares that "all laws and parts of laws now in force in this territory, not inconsistent with this constitution, shall continue and remain in full effect until repealed by the legislature;" we will next examine the power of this court to enforce it.

The 1st section of the 3d article of the constitution declares, that "the judicial power of the state, both as to matters of law and equity, shall be vested in a supreme court, in courts of common pleas for each county," &c. The 2d section declares, that the supreme court "shall have original and appellate jurisdiction, both in common law and chancery, in such cases as shall be directed by law;" and the 3d section, that the "court of common pleas shall have common law and chancery jurisdiction in all such cases as shall be directed by law." These sections refer to future legislative provision to mark the boundaries of jurisdiction between the court of common pleas and the supreme court, and to fix their extent; but they do not refer to such provision, to point out the particular wrongs which may be redressed by petition in equity, by private suit, or by criminal prosecution. Such has been the uniform construction of these sections by the legislature, since the constitution was formed, as must be evident from the fact that no statute law has ever been made or projected, to detail those wrongs, private or public, which the judicial tribunals were to redress by virtue of their chancery powers, or "according to the course of the common law;" such a statute would indeed be a phenomenon, the result of a more perfect legislation than man has yet attained to.

But it has been urged, that the 4th section of the 3d article, is the only part of the constitution which gives this court jurisdiction in criminal cases, and that it expressly refers to future statutory provision, to point out the *cases* in which such jurisdiction may be exercised. The language of this section is: "The judges of the supreme court and courts of common pleas, shall have complete criminal jurisdiction, in such cases, and in such manner, as may be pointed out by law."

The laws in existence at the time when the constitution was formed, 29th Nov. 1802, and the state government commenced, (beside

*Margin note:* HARRISON. March, 1817. Ohio *v.* Lafferty.

HARRISON.    those of the United States) where the common law, the
March, 1817.  statutes of other states adopted by the governor and judges
   Ohio     of the territory, and the acts of the territorial legislatures;
    v.
 Lafferty.   all which were continued in force by the constitution.
This section of the constitution, by giving jurisdiction in matters of
crime, " *in such cases and in such manner as may be pointed out by
law*," must mean, in such cases and in such manner as may be now, or
hereafter pointed out by law; for it must either intend to give the
court jurisdiction according to the then existing laws, or to require of
the legislature an immediate and perfect criminal code, and so operate
as a repeal of the former; it could not intend the latter, because
neither a convention or legislature can ever be construed to have
exceeded their power, unless such intent is clearly and positively
expressed; and so far is such intent from being expressed, by the
section referred to, that the utmost latitude of construction leaves the
intent that way ambiguous. It must intend the former: 1st. Because
the convention who framed the constitution, were limited in their
powers by the ordinance and law of congress; it had not power to
deprive the people of Ohio of the benefit of judicial proceedings accord-
ing to the course of the common law. 2d. Because the convention
intended the constitution to be consistent with the ordinance and law.
And 3d. Because the constitution expressly continues in force all
existing laws.

Such seems ever to have been the opinion of the legislature of this
state; for the first general assembly which sat under the constitution,
passed an act to fix the extent of jurisdiction in the courts, and gave
to the common pleas " cognizance of all crimes, offences and misde-
meanors, the punishment whereof is not capital." 1st vol. stat. laws,
40. But neither the first or second general assembly deemed it neces-
sary to make any material alteration in the criminal code they had
received from the territorial government; nor had the state any other
criminal laws, until the first of August, 1805. And when the state
courts superceded the territorial, they were required, " agreeable to
their respective jurisdictions," to " take cognizance of all judgments,
causes and matters whatsoever, whether civil or criminal, that are
now pending, undetermined or unsatisfied," in the territorial courts;
and they were " authorized and required to hear and decide upon the
said matters." 1st. vol. stat. laws, 50. In prosecutions at common
law, then depending in the territorial courts, the state courts were
thus directed to take cognizance, to hear and decide upon them,
" according to the course of the common law."

But suppose that the position is a correct one, that the principles of the common law have no force or authority in this state, and what are the consequences? They are these: that there are no legal forms of process, of indictments, or trial; there is no law of evidence; and the statute laws cannot be enforced, but must remain inoperative from the uncertain signification of the terms used in defining criminal offences. Beside, the constitution gives jurisdiction to this court in criminal matters, "in such cases and in *such manner as may be pointed out by law;*" and as we have no statute pointing out the manner in which such jurisdiction shall be exercised, the consequence follows that it cannot be lawfully exercised in any manner whatever.

On the whole, therefore, it may be concluded, that were the written laws wholly silent on the subject, the principles and maxims of the common law must, of necessity, be the rule and guide of judicial decision, in criminal as well as in civil cases: to supply the defects of a necessarily imperfect legislation: and to prevent "the will of the judge, that law of tyrants," being substituted in the room of known and settled rules of law in the administration of justice.

And that by the ordinance of congress, the constitution and laws of the state, a common law jurisdiction in criminal cases is established and vested in this court. The motion in arrest is, therefore, overruled.

The defendant was fined 50 dollars in each case, with costs.